06-1763-cv
Kensington v. Itoua

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

_____

August Term, 2006

(Argued: May 30, 2007                                    Decided: October 18, 2007)

Docket Nos. 06-1763-cv (L), 06-2216-cv (CON)

_____

KENSINGTON INTERNATIONAL LIMITED,

Plaintiff-Appellee,

v.

BRUNO JEAN-RICHARD ITOUA and SOCIETE
NATIONALE DES PETROLES DU CONGO,

Defendants-Appellants,

BNP PARIBAS S.A.,

Defendant.

_____

Before: KEARSE, STRAUB, AND POOLER, Circuit Judges.

_____

Appeal from the United States District Court for the Southern District of New York

(Preska, J.) denying defendants-appellants' motions to dismiss under the Foreign Sovereign

Immunities Act.  Because 28 U.S.C. § 1605(a)(2) requires that the cause of action be based upon

a commercial activity carried on in the United States by the foreign state, or upon an act

performed in the United States in connection with a commercial activity of the foreign state

elsewhere, or upon an act outside the territory of the United States in connection with a

1

commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States, and none of those prongs apply, the defendant SNPC is immune from this suit. We remand for the district court to consider whether the FSIA applies to the individual defendant.

REVERSED in part, VACATED in part, and REMANDED.

MICHAEL T. STOLPER  Orrick, Herrington & Sutcliffe LLP (Matthew L. Craner, David M. Powers, Orrick, Herrington & Sutcliffe LLP; Jonathan E. Polonsky, Shari Markowitz Savitt, Hermann Ferre, Thelen Reid & Priest LLP, on the brief), New York, NY, for Appellant Bruno Jean-Richard Itoua.

ARTHUR R. MILLER, Cambridge, MA (Bennette Deacy Kramer, David J. Katz, Schlam Stone & Dolan LLP, New York, NY, on the brief) for Appellant Société Nationale des Pétroles du Congo.

THEODORE B. OLSON, Gibson, Dunn & Crutcher LLP, Washington D.C. (Robert A. Cohen, Dechert LLP; Kevin Samuel Reed, Quinn Emanuel Urquhart Oliver & Hedges LLP, New York, NY; Matthew D. McGill, Claudia M. Osorio, Gibson, Dunn & Crutcher LLP, Washington, D.C., on the brief), for Appellee Kensington International Limited.

SERRIN TURNER, Assistant United States Attorney, for Michael J. Garcia, United States Attorney for the Southern District of New York, New York, NY (Peter Keisler, David S. Jones, Assistant United States Attorneys; Michael S. Raab, Eric J. Feigin, Appellate Staff, Civil Division, Department of Justice, Washington D.C., on the brief) for Amicus Curiae United States of America.

————————————————————

POOLER, Circuit Judge:

Defendants-appellants Société Nationale des Pétroles du Congo ("SNPC") and Bruno Jean-Richard Itoua ("Itoua") appeal from portions of the March 31, 2006 order of the United States District Court for the Southern District of New York (Preska, J.) denying appellants' motions to dismiss based on the Foreign Sovereign Immunities Act ("FSIA") and for lack of personal jurisdiction. We hold that SNPC is immune under the FSIA, and therefore reverse the district court's decision with respect to SNPC. We further find that the district court erred in concluding that the commercial activities exception to immunity under the FSIA applied to Itoua, and therefore vacate that portion of the district court's decision. We remand to the district court to consider in the first instance whether individual officials such as Itoua may invoke the protections of the FSIA. In light of our disposition, we do not reach appellants' challenges to the district court's findings regarding personal jurisdiction.[1]

### BACKGROUND

Plaintiff-appellee Kensington International Limited ("Kensington") is a Cayman Islands corporation that buys and sells debt and equity instruments held by domestic and foreign entities. Kensington is managed by Elliott International Capital Advisors, Inc., a Delaware corporation with its headquarters in New York. Defendant-appellant SNPC is the principal state-run oil company of the Republic of the Congo. SNPC was created by statute on April 23, 1998, and its shares are fully held by the Republic of the Congo. SNPC's purpose, as defined in the statute, is to carry out all operations and transactions relating to Congo oil production and distribution. Defendant-appellant Itoua was the chairman and managing director of SNPC at the time of the

---

[1] SNPC's motion to take judicial notice of a complaint filed in a related action is granted, although we note that this document has no effect on our decision.

3

acts alleged in the complaint and has since become the Minister for Energy and Hydraulics in the Congolese government.[2] Defendant BNP Paribas S.A. ("BNP") is a French bank with a branch office in New York. BNP is not a party to this appeal.

In the early 1980s, Congo executed several loan agreements under which it borrowed in excess of thirty million dollars. Congo has failed to make any payments on these loan agreements since October 1985. Between 1996 and 2001, Kensington obtained the "right, title, and interest" as lender under these loan agreements. Kensington, however, has been unable to collect any money from Congo on these debts. On November 12, 2002, Kensington filed an action in London's Commercial Court (Queen's Bench Division of the High Court of Justice), seeking to enforce the debt obligations. Kensington obtained judgments against Congo for approximately $100 million, but Congo failed to pay any portion of these judgments.[3]

On May 27, 2005, Kensington filed this RICO action in the United States District Court for the Southern District of New York against SNPC, Itoua, and BNP. Kensington alleges that defendants engaged in a complex scheme to "divert oil revenues from the Republic of Congo into the pockets of powerful Congolese public officials, while at the same time protecting both the oil and the oil revenues from seizure by legitimate creditors." Am. Compl. Introduction. This scheme involved the use of "prepayment agreements" by which BNP loaned money to SNPC in return for SNPC's pledge to deliver Congo's oil to BNP at a future date. Id. ¶ 69-71. Hence, BNP would "prepay" SNPC for oil; SNPC would assign "Congo's rights in its oil cargos to BNP

---

[2]The references to "Congo" and "Congolese" in this opinion refer specifically to the Republic of the Congo.

[3] In November, 2005, Kensington won a judgment in the London Commercial Court attaching the proceeds of a sale of Congolese oil worth approximately 39 million dollars.

Paribas, before the oil left Congo's territorial waters"; BNP would then sell the oil to various purchasers, including purchasers in the United States. Id. ¶ 74.

Kensington alleges that the value of the oil pledged to BNP far exceeded the money loaned by BNP to SNPC. For example, Kensington alleges that one prepayment transaction involved a loan for $13 million in exchange for oil rights worth $25 million. In total, Kensington alleges that approximately $1.4 billion in oil sales were pledged to support approximately $650 million in loans. According to the complaint, Congo never received full payment from SNPC for the value of the oil and no accounting was ever made of this excess money. Kensington claims that this "excessive over collateralization served to shield a substantial portion of Congo's oil revenues from both oversight and attachment by creditors." Itoua, as CEO of SNPC during this time, authorized and signed the prepayment agreements on behalf of SNPC. Kensington alleges that Itoua was aware that "SNPC obtained oil from Congo without full compensation and that he personally received a portion of the oil revenues."

Kensington further alleges that these prepayment transactions were routed through "straw men" entities "which allowed BNP Paribas to entirely subsume [defendants'] interests through a complex web of assignments, cessions and delegations." According to Kensington, this arrangement was "explicitly intended to enable BNP Paribas to deliver Congo's oil into the hands of international buyers and deliver the sales proceeds back to the [Congolese President] Sassou-Nguesso regime without interference from Congo's unpaid creditors and without oversight from anyone outside the regime's inner circle."

Kensington's complaint alleges that these transactions constituted a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(1). The predicate acts of

5

racketeering include money laundering in violation of 18 U.S.C. § 1956 and the transportation and receipt of stolen goods in violation of 18 U.S.C. §§ 2314-15. Kensington claims that the oil and the oil revenues involved in the prepayment agreements were the proceeds of unlawful activity, and the sham transactions and excessive collateralizations constituted money laundering. Furthermore, Kensington alleges that the BNP Paribus receipt and shipments of oil and the payments made under the prepayment agreements constituted the knowing receipt, disposal, and transfer of stolen goods. Kensington claims that defendants' racketeering activity resulted in hiding assets from legitimate creditors and therefore caused injury to Kensington. As relief, Kensington seeks treble damages for the harm it has allegedly sustained, which is the value of the debt judgments obtained in England.

Appellants filed motions to dismiss on a variety of grounds: (1) lack of subject matter jurisdiction; (2) lack of personal jurisdiction; (3) *forum non conveniens*; (4) failure to state a claim under the RICO statute; (5) lack of standing; and (6) immunity under the FSIA. Itoua also moved to dismiss for improper service. The district court denied the motions in their entirety. On the question of immunity, the district court found that appellants were not immune under the FSIA because their activities fell within the "commercial activities" exception to immunity. SNPC and Itoua filed timely notices of appeal seeking interlocutory review of the district court's decisions on the issues of sovereign immunity and personal jurisdiction. These appeals have been consolidated.

**DISCUSSION**

We have jurisdiction over this appeal pursuant to the collateral order doctrine, which "allows an immediate appeal from an order denying immunity under the FSIA." Filler v. Hanvit

6

Bank, 378 F.3d 213, 216 (2d Cir. 2004). We review the district court's legal conclusions concerning sovereign immunity de novo and its factual findings for clear error. Id. In determining whether an exception to the FSIA applies, the district court can and should consider matters outside the pleadings relevant to the issue of jurisdiction. See Robinson v. Gov't of Malaysia, 269 F.3d 133, 140-41 (2d Cir. 2001).

"The FSIA is the sole source for subject matter jurisdiction over any action against a foreign state." Cabiri v. Gov't of the Republic of Ghana, 165 F.3d 193, 196 (2d Cir. 1999). The FSIA provides that "a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in sections 1605 to 1607 of this chapter." 28 U.S.C. § 1604. For purposes of the FSIA, "foreign state" includes "a political subdivision of a foreign state or an agency or instrumentality of a foreign state." 28 U.S.C. § 1603(a). Once the defendant presents a prima facie case that it is a foreign state, "the plaintiff has the burden of going forward with evidence showing that, under exceptions to the FSIA, immunity should not be granted, although the ultimate burden of persuasion remains with the alleged foreign sovereign." Cabiri, 165 F.3d at 196 (internal quotation marks omitted).

Here, the only pertinent exception is the "commercial activities" exception provided in Section 1605(a):

> A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case . . . (2) in which the action is based [i] upon a commercial activity carried on in the United States by the foreign state; or [ii] upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or [iii] upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

28 U.S.C. § 1605(a). A plaintiff need only show that one of these conditions is met for the

7

commercial activities exception to apply.

In this case, the district court determined that Section 1605(a)(2) applied to SNPC based on the following alleged acts: (1) the sale of at least eleven shipments of "stolen"[4] oil totaling 9,210,221 barrels to United States purchasers; and (2) multi-million dollar premium payments to the New York branch of BNP.  The district court further concluded that because Itoua was chairman and managing director of SNPC during the relevant time, SNPC's acts were imputed to him and thus his conduct also satisfied the commercial activities exception.  In reaching this conclusion, the district court assumed without deciding that the FSIA applied to individual officials like Itoua.  The district court noted that this was an open question, but found it unnecessary to decide the issue because even if Itoua could invoke the immunity provisions of the FSIA, the district court found that the commercial activities exception abrogated any immunity to which he was entitled.

On appeal, SNPC and Itoua argue, inter alia, that the district court erred in finding that the commercial activities exception applied because Kensington's cause of action is not "based upon" the alleged activity, or an alleged act, in the United States, as required by the first two prongs of Section 1605(a)(2), and the alleged commercial activity abroad did not have a "direct effect" in the United States, as required by the third prong of Section 1605(a)(2).  We agree with SNPC and Itoua that the commercial activities exception does not apply to their alleged conduct here.  Accordingly, for the reasons  explained in detail below, we reverse the judgment of the district court with respect to SNPC and vacate the judgment of the district court with respect to

---

[4]Appellants vigorously dispute the characterization that the oil was "stolen."  This issue is irrelevant for purposes of our analysis.

Itoua.  We do not reach any of the other arguments raised by appellants in their briefs.

***SNPC***

Kensington does not dispute that SNPC, all of whose shares are owned by the Republic of the Congo, is a "foreign state" for purposes of the FSIA.  See 28 U.S.C. § 1603(a)-(b).  Thus, SNPC is "presumptively immune from the jurisdiction of United States courts unless a specified exception applies."  Saudi Arabia v. Nelson, 507 U.S. 349, 355 (1993).  In denying SNPC's motion to dismiss under the FSIA, the district court found that each of the three prongs of the commercial activities exception applied to the conduct alleged here.

We conclude that the district court did not properly apply the statutory requirements that Kensington's cause of action be "based upon" SNPC's alleged commercial activity in the United States, or "based . . . upon" an act in the United States in connection with commercial activity elsewhere, or "based . . . upon" SNPC's act or commercial activity abroad that is alleged to have had a "direct effect" in the United States.  The absence of these elements renders the commercial activities exception inapplicable, and therefore SNPC is immune from suit under the FSIA.

1. *Whether Kensington's cause of action is "based upon" SNPC's alleged commercial activity in the United States*

The first prong of the commercial activities exception applies if the plaintiff's action is "based upon a commercial activity carried on in the United States by the foreign state."  28 U.S.C. § 1605(a)(2).  The Supreme Court has found that the phrase "based upon" in the first prong of Section 1605(a)(2) is "read most naturally to mean those elements of a claim that, if proven, would entitle a plaintiff to relief under his theory."  Nelson, 507 U.S. at 357.  The term "calls for something more than a mere connection with, or relation to, commercial activity."  Id. at 358.  The Court clarified, however, that it did not "mean to suggest that the first clause of §

9

1605(a)(2) necessarily requires that each and every element of a claim be commercial activity." Id. at 358 n.4. In Transatlantic Shiffahrtskontor GmbH v. Shanghai Foreign Trade Corp., 204 F.3d 384 (2d Cir. 2000), we analyzed the phrase "based upon" in conjunction with the third prong of Section 1605. We explained:

> What does 'based upon' mean? At a minimum, that language implies a causal relationship. Thus, at the least, the 'act that caused a direct effect in the United States' ('the Act') must be a 'but for' cause of the judgments that are the ground of this suit. That is, it must be true that without the Act, there would be no judgments on which to sue. But this is not enough. . . . '[B]ased upon' requires a degree of closeness between the acts giving rise to the cause of action and those needed to establish jurisdiction that is considerably greater than common law causation requirements.

Id. at 390. We further explained in Reiss v. Société Centrale du Groupe des Assurances Nationales, 235 F.3d 738 (2d Cir. 2000), that "based upon" requires "a significant nexus . . . between the commercial activity in this country upon which the exception is based and a plaintiff's cause of action." Id. at 747 (internal quotation marks omitted; emphasis added); see also Garb v. Republic of Poland, 440 F.3d 579, 586 (2d Cir. 2006) ("As a threshold step in assessing plaintiffs' reliance on the 'commercial activity' exception, we must identify the act of the foreign sovereign State that serves as the basis for plaintiffs' claims.") (citing Callejo v. Bancomer, S.A., 764 F.2d 1101, 1109 (5th Cir. 1985) (explaining that to determine the basis of a claim, a court should focus on the "gravamen of the complaint")).

Kensington dismisses Transatlantic as "plainly inapposite" because Transatlantic involved the third prong of the commercial activities exception and any attempt to apply its construction of "based upon" to other prongs "finds no support whatsoever in the decisions of this Court." We find no merit in Kensington's attempt to distinguish Transatlantic. Absent any indication from Congress to the contrary, we do not believe that the phrase "based upon" has

10

distinct meanings in different parts of the same provision of the statute. See, e.g., Gustafson v. Alloyd Co., 513 U.S. 561, 570 (1995) (noting that the "normal rule of statutory construction" is that "identical words used in different parts of the same act are intended to have the same meaning") (internal quotation marks omitted). Transatlantic's interpretation of the phrase "based upon" applies equally to all three prongs of the commercial activities exception, and we must follow its guidance in evaluating whether the required nexus exists here.

Citing the statement of the Nelson Court that it "did not mean to mean to suggest that the first clause of § 1605(a)(2) necessarily requires that each and every element of a claim be commercial activity by a foreign state," 507 U.S. at 358 n.4, Kensington contends that it has satisfied the "based upon" element because it need only show that one of the elements of its cause of action is established by the commercial activity in the United States. Thus, Kensington argues, because the RICO statute requires as one of its elements that the stolen property be transported in interstate or foreign commerce, SNPC's alleged shipment of allegedly stolen oil in the United States establishes an element of the RICO claim. As support for this contention, Kensington relies on various cases from other circuits. See, e.g., Kirkham v. Société Air France, 429 F.3d 288, 292 (D.C. Cir. 2005) (stating that "so long as the alleged commercial activity establishes a fact without which the plaintiff will lose, the commercial activity exception applies"); BP Chems. Ltd. v. Jiangsu Sopo Corp., 285 F.3d 677, 682 (8th Cir. 2002) ("We emphasize that only one element of a plaintiff's claim must concern commercial activity carried on in the United States."); Sun v. Taiwan, 201 F.3d 1105, 1109 (9th Cir. 2000) ("The entire case need not be based on the commercial activity of the defendant.").

Applying the principles of Transatlantic, Reiss, Garb, and Nelson, we cannot agree with

11

Kensington's position that its action is "based upon" the alleged acts in the United States merely because those acts satisfy the interstate commerce element of the RICO statute. As Transatlantic makes clear, the "based upon" element requires a "degree of closeness between the acts giving rise to the cause of action and those needed to establish jurisdiction that is considerably greater than common law causation requirements." 204 F.3d at 390 (emphasis added). This "degree of closeness" must exist between the commercial activity and the gravamen of the plaintiff's complaint. See Garb, 440 F.3d at 586; see also Nelson, 507 U.S. at 358 (rejecting argument that plaintiffs' suit was based upon commercial acts in the United States because "[w]hile these activities led to the conduct that eventually injured the Nelsons, they are not the basis for the Nelsons' suit") (emphasis added).

The requisite nexus does not exist between SNPC's commercial activity in the United States—the shipment of oil and the premium payments—and the gravamen of Kensington's complaint. These acts in the United States had no bearing on Kensington's ability or inability to recover the money owed by Congo under the loan agreements. As Kensington's complaint makes clear, its claims arise from the alleged scheme to use "excessive over collateralized" oil loans to thwart legitimate creditors for the financial benefit of government officials. The gravamen of Kensington's complaint therefore is SNPC's entering into the prepayment agreements with BNP. It is these agreements that are at the core of the alleged scheme to hide assets and prevent oil revenues from being used to satisfy debts held by legitimate creditors. This scheme would have the same alleged effect on Kensington's ability to collect on its debt even if all of the oil shipments had been to destinations outside the United States or if the premium payments had been made through BNP's Paris office instead of its New York branch.

12

Kensington has failed to show how the oil shipments and premium payments, rather than the execution of the prepayment agreements themselves, form the basis of its action.

Furthermore, it is clear that the prepayment agreements themselves have no connection to the United States. As the undisputed affidavit presented by BNP established, these agreements were negotiated in France, written in French, apply to foreign entities, are governed by French law, and specify France as the exclusive jurisdiction to resolve disputes arising out of those agreements.[5] Kensington has therefore failed to show that its cause of action is "based upon a commercial activity carried on in the United States by the foreign state," 28 U.S.C. § 1605(a)(2). Accordingly, the first prong of the commercial activities exception does not apply here.

> 2. *Whether Kensington's cause of action is "based . . . upon" any alleged act performed by SNPC in the United States in connection with its commercial activity abroad*

The second prong of the commercial activities exception applies if the plaintiff's action is "based . . . upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere." 28 U.S.C. § 1605(a)(2) (emphasis added). This prong "is generally understood to apply to non-commercial acts in the United States that relate to commercial acts abroad." Byrd v. Corporacion Forestal y Industrial de Olancho S.A., 182 F.3d 380, 390 (5th Cir. 1999) (internal quotation marks omitted) (emphasis added). Here, Kensington has not argued that any non-commercial acts performed by SNPC in the United States allegedly formed the basis of its complaint. Accordingly, this prong of the commercial activities exception

---

[5]We note, but do not rely on, the fact that another court has already made a similar determination in a related lawsuit. See Kensington Int'l Ltd. v. BNP Paribas S.A., No. 602569/03, slip op. at 3-4 (N.Y. Sup. Ct. Jan. 24, 2005) (granting BNP's motion to dismiss on *forum non conveniens* grounds on the basis that "all meaningful events occurred outside the United States"). Kensington did not appeal that decision.

13

is also inapplicable.

3.    *Whether SNPC's alleged activity abroad had a "direct effect" in the*
      *United States*

The third prong of the commercial activities exception applies when the plaintiff's action

is "based . . . upon an act outside the territory of the United States in connection with a

commercial activity of the foreign state elsewhere and that <u>act causes a direct effect in the United</u>

<u>States</u>." 28 U.S.C. § 1605(a)(2) (emphasis added). Here, Kensington's action may properly be

characterized as "based . . . upon" the execution of the prepayment agreements, which can

constitute "an act outside the territory of the United States in connection with a commercial

activity of the foreign state elsewhere." However, in order to abrogate sovereign immunity under

this provision, Kensington must also show that this act caused a "direct effect" in the United

States.

"[A]n effect is direct if it follows as an immediate consequence of the defendant's . . .

activity." <u>Republic of Argentina v. Weltover, Inc.</u>, 504 U.S. 607, 618 (1992) (internal quotation

marks omitted; alteration in original). The effect need not be substantial or foreseeable, <u>id.</u>, but it

must be something more than trivial or incidental. "Congress did not intend to provide

jurisdiction whenever the ripples caused by an overseas transaction manage eventually to reach

the shores of the United States." <u>Virtual Countries, Inc. v. Republic of South Africa</u>, 300 F.3d

230, 236 (2d Cir. 2002) (internal quotation marks omitted). Here, the record does not support a

finding that SNPC's execution of the prepayment agreements caused a "direct effect" in the

United States.

Accepting as true Kensington's allegation that SNPC executed an elaborate scheme to

thwart legitimate creditors from collecting on debts owed by Congo by "stealing" oil and

14

engaging in "straw men" transactions to keep the oil revenue away from creditors, we cannot conclude that these actions had a "direct" or "immediate" consequence in the United States. The record does not indicate that the prepayment agreements required performance in the United States. See Int'l Hous. Ltd. v. Rafidain Bank Iraq, 893 F.2d 8, 11 (2d Cir. 1989) (finding no direct effect because "[t]he various contracts did not provide for payment in the United States, and the use of American personnel and equipment by IHL in Iraq seems to us to be so incidental to the interests of the United States as to be irrelevant"). Nor does the record indicate that Kensington has suffered harm felt in the United States. Kensington is a foreign corporation and thus any alleged injury it suffered occurred outside the United States. In Rafidain Bank, we held that the "direct effect in the United States" standard was not met where the loss was suffered by a foreign corporation:

> [T]he fact that IHL is a foreign corporation is relevant to whether the financial losses to IHL constituted a "direct effect" in the United States. . . . The fact that some or all of IHL's principals or officers may be United States citizens does not outweigh the facts that they organized the company outside the United States and that its losses in the instant transaction thus occurred elsewhere.

Id. at 10-11. Thereafter, we held that "the fact that an American individual or firm suffers some financial loss from a foreign tort cannot, standing alone, suffice to" satisfy the "direct effect" prong of the commercial activity exception. Antares Aircraft, L.P. v. Fed. Republic of Nigeria, 999 F.2d 33, 36 (2d Cir. 1993). "If a loss to an American individual and firm resulting from a foreign tort were sufficient standing alone to satisfy the direct effect requirement, the commercial activity exception would in large part eviscerate the FSIA's provision of immunity for foreign states." Id. A fortiori, the financial losses allegedly suffered by Kensington, a foreign corporation that is not present in the United States, do not meet the "direct effect in the United

15

States" standard.

On appeal, Kensington does not attempt to defend the district court's analysis on this point. Rather, Kensington raises a new argument in support of its view that SNPC's actions caused a "direct effect" in the United States. Kensington contends that the "direct effect" in the United States is the interference with a judgment obtained by Kensington in another lawsuit in the United States District Court for the Southern District of New York—against the Republic of the Congo—which recognized the validity of the foreign judgment Kensington had obtained in London. See Kensington Int'l Ltd. v. Republic of Congo, 461 F.3d 238, 240 (2d Cir. 2006) ("On September 30, 2004, Judge Preska granted summary judgment to Kensington on its claim for recognition of the English judgment."). Kensington argues that a judgment is essentially like a contract and the "place of performance" of a judgment is the jurisdiction in which it is entered. Thus, according to Kensington, SNPC has "breached" a "contract" requiring "performance" in New York.

We find several flaws in this argument. First, it is procedurally improper because it is raised for the first time on appeal. The district court granted summary judgment recognizing the foreign judgment on September 30, 2004. Id. This was months before Kensington's complaint in this case was filed, and long before its opposition to appellants' motions to dismiss was due. Kensington could have raised this argument below, but did not do so. Such a failure generally bars appellate consideration of the omitted argument, see Paese v. Hartford Life and Accident Ins. Co., 449 F.3d 435, 446 (2d Cir. 2006), and we see no good reason here to excuse Kensington's failure.

Moreover, even if we were to exercise our discretion to consider this waived argument,

16

see Allianz Ins. Co. v. Lerner, 416 F.3d 109, 114 (2d Cir. 2005), we do not find it persuasive. We reject Kensington's assertion that the legal judgment at issue here is equivalent to a private contract that requires performance in New York. This judgment does not have a "place of performance." There is no requirement that repayment of this debt be made in New York. Payment could come from anywhere and take any form. In addition, the judgment is against the Republic of the Congo, not SNPC or Itoua. The New York judgment placed no obligations or responsibilities on SNPC or Itoua to perform any act, let alone one in the United States. See, e.g., Virtual Countries, 300 F.3d at 240 (finding no direct effect because "[n]o obligation—contractual or otherwise—ran to the plaintiff from the [defendant], let alone one to be performed in the United States").

Furthermore, the prepayment agreements were negotiated in 1999 and the alleged unlawful transactions under the agreements occurred between 1999 and 2004. The complaint further alleges that the "latest" known act of alleged racketeering activity occurred in January 2004. The New York judgment was entered at the earliest on September 30, 2004, months after the alleged racketeering activity. Kensington does not explain how this scheme had the "direct effect" of interfering with a judgment that did not yet exist.

Finally, accepting Kensington's rationale would substantially narrow the scope of the FSIA. The threshold for recognition of a foreign judgment is not high. See, e.g., N.Y. C.P.L.R. §§ 5302-5304 (subject to narrow exceptions, foreign judgments that are "final, conclusive and enforceable" in the country where rendered are deemed conclusive between the parties and enforceable by U.S. courts). Under Kensington's theory, the mere recognition of a foreign judgment by a United States court would be sufficient to abrogate sovereign immunity regardless

17

of how insubstantial the connection was between the acts underlying that judgment and the United States. We do not believe such a narrow view of sovereign immunity corresponds with the statutory language. See also Transatlantic, 204 F.3d at 390-91 ("[E]ven assuming that foreign judgments . . . can ever satisfy the 'based upon' requirement, if the acts upon which the . . . judgments are themselves grounded do not meet the 'based upon' requirement of § 1605(a)(2) of the FSIA . . . an action to enforce the foreign judgments in U.S. courts must fail for lack of subject matter jurisdiction.").

\*     \*     \*

For these reasons, we find that the commercial activities exception does not apply to SNPC. We therefore hold that SNPC is immune from suit under the FSIA. Accordingly, the district court's decision with respect to SNPC is reversed with instructions to dismiss SNPC from the case. See Verlinden B.V. v. Cent. Bank of Nigeria, 461 U.S. 480, 485 n.5 (1983) ("[I]f none of the exceptions to sovereign immunity set forth in the Act applies, the District Court lacks both statutory subject-matter jurisdiction and personal jurisdiction.").

### Itoua

The district court determined that the commercial activities exception applied to Itoua as well based solely on the fact that he was chairman and managing director of SNPC at the time of the acts alleged in the complaint. Kensington does not allege that Itoua engaged in any other activities that would trigger the commercial activities exception. Thus, in light of our holding above that SNPC's alleged acts do not satisfy any of the three prongs of the commercial activities exception, we accordingly hold that the district court erred in concluding that Itoua's actions fell within this provision.

18

This does not end the analysis, however. As the district court noted, it is an open question in this circuit whether individual officials enjoy sovereign immunity under the FSIA. The FSIA applies to foreign states. 28 U.S.C. § 1604. For purposes of the FSIA, a "foreign state" includes a "political subdivision of a foreign state or an agency or instrumentality of a foreign state." 28 U.S.C. § 1603(a). "[A]gency or instrumentality of a foreign state" is in turn defined as any entity

> (1) which is a separate legal person, corporate or otherwise, and
> (2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and
> (3) which is neither a citizen of a State of the United States . . . nor created under the laws of any third country.

28 U.S.C. § 1603(b). On their face, these provisions do not expressly include or exclude individual officials.

The United States, which submitted an amicus brief in this case at the request of the Court, contends that these definitions do not encompass individual officials, and thus Itoua is not entitled to invoke the protections of the FSIA. See Br. of Amicus Curiae United States of America, at 2-10.[6] The United States argues that the FSIA was not intended to displace common law immunity, and therefore common law principles govern the question of whether individual officials like Itoua are immune from suit. The Ninth Circuit was the first circuit court to address this issue, and it rejected the government's position. See Chuidian v. Philippine Nat'l Bank, 912 F.2d 1095, 1100-03 (9th Cir. 1990) (holding that the FSIA applies to individuals acting in their

---

[6]Kensington's motion for leave to file a response to the government's amicus brief is granted. The letter brief filed by Kensington on May 25, 2007, has been received and considered by the panel.

official capacity on behalf of a foreign sovereign). Relying on Chuidian, other circuits have also concluded that the FSIA applies to individuals acting in their official capacity. See, e.g., Velasco v. Gov't of Indonesia, 370 F.3d 392, 398-99 (4th Cir. 2004); Keller v. Cent. Bank of Nigeria, 277 F.3d 811, 815 (6th Cir. 2002); Byrd v. Corporacion Forestal y Indus. de Olancho S.A., 182 at 388; El-Fadl v. Cent. Bank of Jordan, 75 F.3d 668, 671 (D.C. Cir. 1996). But there is not consensus on this issue. See Enahoro v. Abubakar, 408 F.3d 877, 881-82 (7th Cir. 2005). This circuit has yet to address the question. See Tachiona v. United States, 386 F.3d 205, 220-21 (2d Cir. 2004) (noting, but declining to address, the separate but related question of whether the FSIA supplants common-law head-of-state immunity).

The district court recognized that ordinarily it would need to first determine whether Itoua can invoke the immunity provisions of the FSIA, but found it unnecessary because it concluded that even if Itoua were entitled to sovereign immunity under the FSIA, the commercial activities exception abrogated that immunity. As we explained above, that conclusion was erroneous. Thus, if the FSIA applies to Itoua, then, like SNPC, he is immune from this suit and should be dismissed from the case. Accordingly, we vacate the district court's decision with respect to Itoua and remand the case to the district court to address in the first instance (1) under what circumstances, if any, the FSIA applies to individuals; and (2) whether Itoua has demonstrated the existence of such circumstances.[7] In determining whether Itoua is a "foreign state" for purposes of the FSIA, we note that the burden rests squarely on Itoua. See Virtual Countries, 300

---

[7]Itoua has not argued that he is entitled to immunity under the common law, and therefore we express no opinion on the availability or unavailability of that defense. In response to the suggestion in the government's amicus brief that such immunity may be available, Kensington contends that Itoua has waived any opportunity to raise such a defense. We leave it to the district court to address this issue if and when it arises.

20

F.3d at 241 ("[I]n a challenge to FSIA subject matter jurisdiction, the defendant must present a prima facie case that it is a foreign sovereign.") (internal quotation marks omitted).

## CONCLUSION

For the foregoing reasons, the judgment of the district court is reversed in part, vacated in part, and remanded for further proceedings consistent with this opinion.