*Ashim Khattri Chettri, et al. v. Nepal Rastra Bank, et al.*

# In the

# United States Court of Appeals

## For the Second Circuit

————

AUGUST TERM, 2015

SUBMITTED: AUGUST 25, 2015
DECIDED: JUNE 20, 2016

No. 14-3724

ASHIM KHATTRI CHETTRI, d/b/a Tarala Internationals, WU LIXIANG,
individually and as agent and partner of Tarala Internationals,
*Plaintiff-Appellants,*

*v.*

NEPAL RASTRA BANK, AND DEPARTMENT OF REVENUE INVESTIGATION,
GOVERNMENT OF NEPAL,
*Defendant-Appellees,*

NEPAL BANGLADESH BANK, LTD., AND CHASE MANHATTAN BANK,
*Defendants,*

————

Appeal from the United States District Court
for the Southern District of New York.
No. 10 Civ. 8470 – Paul G. Gardephe, *Judge*.

————

Before: NEWMAN, WALKER, and JACOBS, *Circuit Judges*.

————

Ashim Khattri Chettri, doing business as Tarala Internationals ("Tarala"), and Wu Lixiang ("Wu") appeal from the decision of the United States District Court for the Southern District of New York (Gardephe, *J.*) vacating a default judgment and dismissing their complaint against Nepal Rastra Bank ("Rastra Bank") and the Department of Revenue Investigation of the Government of Nepal ("the Department").  The district court concluded that it lacked subject matter jurisdiction because both Rastra Bank and the Department, as political subdivisions or agencies of the Government of Nepal ("Nepal"), are immune from suit under the Foreign Sovereign Immunities Act of 1976 ("FSIA"), 28 U.S.C. § 1602 *et seq.* The district court also concluded that it lacked personal jurisdiction because Tarala and Wu failed to comply with the service of process requirements of the FSIA.  We agree with the district court's determination that it lacked subject matter jurisdiction and therefore need not address the issue of service of process.  Accordingly, we AFFIRM the district court's judgment vacating the default judgment and dismissing the complaint.

––––––––

DILLI RAJ BHATTA, Bhatta Law & Associates, PLLC, New York, NY, *for Plaintiff-Appellants.*

KHAGENDRA GHARTI-CHHETRY, Chhetry & Associates, P.C., New York, NY, *for Defendant-Appellees.*

————

JOHN M. WALKER, JR., *Circuit Judge*:

Ashim Khattri Chettri, doing business as Tarala Internationals ("Tarala"), and Wu Lixiang ("Wu") appeal from the decision of the United States District Court for the Southern District of New York (Gardephe, *J.*) vacating a default judgment and dismissing their complaint against Nepal Rastra Bank ("Rastra Bank") and the Department of Revenue Investigation of the Government of Nepal ("the Department"). The district court concluded that it lacked subject matter jurisdiction because both Rastra Bank and the Department, as political subdivisions or agencies of the Government of Nepal ("Nepal"), are immune from suit under the Foreign Sovereign Immunities Act of 1976 ("FSIA"), 28 U.S.C. § 1602 *et seq.* The district court also concluded that it lacked personal jurisdiction because Tarala and Wu failed to comply with the service of process requirements of the FSIA. We agree with the district court's determination that it lacked subject matter jurisdiction and therefore need not address the issue of service of process. Accordingly, we AFFIRM the district court's judgment vacating the default judgment and dismissing the complaint.

**BACKGROUND**

Tarala, a Colorado corporation, is the principal supplier of clothing and military equipment to Nepal. Wu is the director of a company that helps Tarala coordinate the logistics of its international transactions. Wu has acted as Tarala's agent in connection with contracts with Nepal and has also independently conducted business with Nepal.

Rastra Bank, located in Kathmandu, is Nepal's financial agent and is authorized to open and operate accounts, settle obligations, and issue letters of credit on behalf of Nepal. The Department is the prosecutorial arm of Nepal's Ministry of Finance and its duties include monitoring wire transfers for compliance with Nepalese laws such as the Nepal Asset (Money) Laundering Prevention Act of 2008.

Between 2006 and 2008, Nepal placed several orders with Tarala for equipment for the Nepalese army and police force. Acting as Tarala's distribution partner in these transactions, Wu coordinated procurement and delivery of the goods. Nepal paid Tarala for the equipment through letters of credit issued by Rastra Bank to Chase Manhattan Bank, naming Tarala as a beneficiary.

On July 23, 2008, Tarala wired $1 million from Chase Manhattan Bank, located in New York, to Wu's personal account at Nepal Bangladesh Bank, Ltd. ("Bangladesh Bank"), which is located

in Kathmandu. Wu claims that he intended to use the $1 million to pay a third party to transport equipment and complete delivery of goods to Nepal.

On August 4, 2008, Bangladesh Bank notified Rastra Bank of irregularities concerning the wire payment to Wu. Bangladesh Bank informed Rastra Bank that Wu had failed to provide adequate documentation of the source of the funds and that, as a result, Bangladesh Bank was freezing the funds pending an explanation of their source and pending further instructions from Rastra Bank. On August 27, 2008, the Department instructed Rastra Bank to direct Bangladesh Bank to freeze Wu's account pending further investigation.

In an attempt to persuade Bangladesh Bank to release the funds, Tarala provided letters from financial institutions and government agencies attesting to the legitimacy of the wire transfer. Rastra Bank and the Department took the position that this documentation was insufficient to establish the source of the funds.

On November 10, 2010, after the letters were unsuccessful in unfreezing the account, Tarala and Wu filed the underlying complaint in this action. Rastra Bank and the Department responded by claiming that Tarala and Wu failed to comply with the statutory requirements for service of process under the FSIA.

On January 18, 2011, the district court ordered Rastra Bank and the Department to show cause why a default judgment should not be entered against them.  After Rastra Bank and the Department failed to respond by a court-imposed deadline, the district court entered a default judgment in favor of Tarala and Wu in the amount of $1,000,500.

On February 25, 2011, the Department charged Wu with violating the Nepal Asset (Money) Laundering Prevention Act of 2008 and, pursuant to that Act, demanded confiscation of the disputed funds.

On September 2, 2014, on the motion of Rastra Bank and the Department, and after receiving a statement of interest from the United States recommending vacatur, the district court reversed course.  The district court vacated the default judgment and dismissed the complaint for lack of subject matter and personal jurisdiction.

Tarala and Wu now appeal, arguing that the district court had both subject matter and personal jurisdiction over this action.

**DISCUSSION**

In reviewing a district court's determination regarding subject matter jurisdiction under the FSIA, we use a clear error standard for factual findings and we review legal conclusions de novo. *U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co.*, 241 F.3d 135, 150–51 (2d Cir.

2001).  We review for abuse of discretion a district court's decision to grant a motion to vacate a default judgment. *SEC v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998).

Tarala and Wu argue that the district court incorrectly determined that it lacked subject matter and personal jurisdiction and that the district court abused its discretion by vacating the default judgment based on these incorrect determinations.   We disagree. The district court lacked subject matter jurisdiction because Rastra Bank and the Department are immune from suit under the FSIA.

**I.     Subject Matter Jurisdiction and the FSIA**

The FSIA "provides the sole basis for obtaining jurisdiction over a foreign state in federal court." *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 439 (1989).   The Act renders a foreign state "presumptively immune from the jurisdiction of United States courts," *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993), and defines the term "foreign state" to include "a political subdivision of a foreign state or an agency or instrumentality of a foreign state," 28 U.S.C. § 1603(a).

Subject matter jurisdiction exists under the FSIA only if a specified exception to that Act applies. *Nelson*, 507 U.S. at 355. Because personal jurisdiction exists under the FSIA only if (a) service of process has been made in accordance with the Act and (b) subject

matter jurisdiction exists under the Act, a finding that a federal court lacks subject matter jurisdiction over a claim against a foreign state necessarily yields a finding that the court lacks personal jurisdiction as well. *See Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 485 n. 5 (1983).

A defendant seeking dismissal for lack of subject matter jurisdiction under the FSIA bears the burden of presenting a prima facie case that it is a foreign sovereign. *Virtual Countries, Inc. v. Republic of S. Africa*, 300 F.3d 230, 241 (2d Cir. 2002). If the defendant meets this burden, the plaintiff must then demonstrate that the foreign sovereign lacks immunity due to an FSIA exception. *Cargill Int'l S.A. v. M/T Pavel Dybenko*, 991 F.2d 1012, 1016 (2d Cir. 1993).

Tarala and Wu do not dispute the district court's determination that the Department is a political subdivision of a sovereign state and that Rastra Bank is an agency or instrumentality of a foreign state. Tarala and Wu do, however, challenge the district court's rejection of their argument that two specified exceptions to the FSIA apply: the "commercial activity" exception set forth in Section 1605(a)(2) and the "takings" exception set forth in Section 1605(a)(3). We agree with the district court that neither exception applies on these facts.

**A. The Commercial Activity Exception**

Under the commercial activity exception set forth in Section 1605(a)(2), a foreign state lacks immunity under the FSIA when:

the action is based [1] upon a commercial activity carried on in the United States by the foreign state; or [2] upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or [3] upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

28 U.S.C. § 1605(a)(2).  None of the three grounds for invoking the commercial activity exception applies here.

**1. The Inapplicability of the First Ground**

With respect to the first ground, this action is not "based upon a commercial activity carried on in the United States." *Id*.  The "threshold step" in assessing the applicability of the commercial activity exception is always to "identify the act of the foreign sovereign State that serves as the basis for plaintiffs' claims." *Garb v. Republic of Poland*, 440 F.3d 579, 586 (2d Cir. 2006).  Tarala and Wu cite as a commercial activity Nepal's entering into a contract with Colorado-based Tarala to supply goods and equipment.  This lawsuit, however, is based not upon that contract but upon the Department and Rastra Bank's freezing of Wu's account in Nepal.

The term "'based upon' . . . calls for something more than a mere connection with, or relation to, commercial activity." *Nelson*,

507 U.S. at 358 (footnote omitted). In order for a cause of action to be "based upon" a commercial activity and thereby fit within the FSIA exception, there must exist a "degree of closeness . . . between the commercial activity and the gravamen of the plaintiff's complaint." *Kensington Int'l Ltd. v. Itoua*, 505 F.3d 147, 156 (2d Cir. 2007) (internal quotation marks omitted).   This degree of closeness must be "considerably greater than common law causation requirements." *Transatlantic Shiffahrtskontor GmbH v. Shanghai Foreign Trade Corp.*, 204 F.3d 384, 390 (2d Cir. 2000).

The district court properly found that the gravamen of the complaint is the freezing of the $1 million that Tarala wired to Wu's Bangladesh Bank account.   A foreign sovereign engages in a commercial activity within the meaning of the FSIA only when it "acts[] not as regulator of a market, but in the manner of a private player within it." *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 614 (1992); *see also Garb*, 440 F.3d at 598 ("[A] state's confiscation of property within its borders is not a 'commercial' act.").   Rastra Bank and the Department were acting as government regulators, not private commercial players, when they froze Wu's account as part of an investigation and therefore were not engaged in a commercial activity.

Tarala and Wu contend that Tarala wired the $1 million to Wu so that Wu could facilitate the delivery of equipment under the

contracts with Nepal. Rastra Bank and the Department argue that insufficient evidence supports this contention. The dispute is beside the point, however, because, even if commercial activities had led to the conduct that eventually injured Tarala and Wu, this would not alone render such activities the basis of their suit. In *Saudi Arabia v. Nelson*, the Supreme Court held that alleged torts rather than the commercial activities preceding those torts formed the basis of the plaintiffs' action if, "[e]ven taking each of the [plaintiffs'] allegations about [the commercial activities] as true, those facts alone entitle the [plaintiffs] to nothing under their theory of the case." 507 U.S. at 358. Tarala and Wu are not alleging breach of contract in this action. At the time Rastra Bank and the Department froze Wu's account, Rastra Bank had already paid in full the letters of credit in satisfaction of the contracts between Nepal and Tarala. This action is based upon Bangladesh Bank's allegedly tortious freezing, not the contract, and therefore the first ground for invoking the "commercial activity" exception does not apply.

### 2. The Inapplicability of the Second Ground

With respect to the second ground, this action plainly is not "based . . . upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere." § 1605(a)(2). This action is based upon the freezing of the $1 million wired to Wu's account at Bangladesh Bank. The freezing took place

in Nepal: the Department, Rastra Bank, and the bank that held Wu's account are all located in Nepal. The freezing was in no sense "an act performed in the United States," and Tarala and Wu do not argue otherwise. Thus, the second ground of the "commercial activity" exception does not apply.

### 3. The Inapplicability of the Third Ground

With respect to the third ground, this action is not "based . . . upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere [when] that act causes a direct effect in the United States." § 1605(a)(2). This FSIA ground can be broken into three requirements: (1) that the operative act occur outside the United States, (2) that the act occur in connection with a commercial activity of the foreign state elsewhere, and (3) that the act cause a direct effect in the United States. Because the freezing of the funds at issue occurred in Nepal, this action plainly satisfies the first requirement, but the action does not satisfy the second or third.

As to the second requirement, Tarala and Wu fail to establish that the freezing of Wu's funds occurred in connection with commercial activity. We interpret the term "in connection with" narrowly, *see Garb*, 440 F.3d at 587, and a plaintiff must cite more than "tangential commercial activities to which the 'acts' forming the basis of the claim have only an attenuated connection," *Drexel*

*Burnham Lambert Grp. Inc. v. Comm. of Receivers for Galadari*, 12 F.3d 317, 330 (2d Cir. 1993). In this matter, any connection between the contract and the freezing is too attenuated. As we have already pointed out, Nepal had fulfilled its obligations under the contract by the time that Rastra Bank and the Department froze Wu's account.

As to the third requirement, Tarala and Wu also fail to demonstrate a "direct effect" in the United States. "[A]n effect is direct if it follows as an immediate consequence of the defendant's activity." *Weltover*, 504 U.S. at 618 (internal quotation marks and alteration omitted). "[T]he mere fact that a foreign state's commercial activity outside of the United States caused physical or financial injury to a United States citizen is not itself sufficient to constitute a direct effect in the United States." *Guirlando v. T.C. Ziraat Bankasi A.S.*, 602 F.3d 69, 78 (2d Cir. 2010). Here, the immediate consequences of the account freezing took place outside of the United States. Even under the version of the facts most favorable to Tarala and Wu, freezing Wu's account at most prevented the payment of a third party in Nepal; it did not directly affect the satisfaction of the contract between Nepal and Tarala in the United States.

Accordingly, after examining each of the three grounds for invocation of Section 1605(a)(2), we conclude that the commercial activity exception does not apply in this action.

**B.  The Takings Exception**

Tarala and Wu also attempt to invoke the FSIA's takings exception. Under Section 1605(a)(3), a foreign state lacks immunity under the FSIA in any action

> in which [1] rights in property [2] taken [3] in violation of international law are in issue and [4a] that property or any property exchanged for such property is present in the United States in connection with a commercial activity carried on in the United States by the foreign state; or [4b] that property or any property exchanged for such property is owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in a commercial activity in the United States.

*See Garb*, 440 F.3d at 588.

The applicability of the takings exception founders, however, on the requirement that the rights in property must be "taken in violation of international law."  We interpret the phrase "taken in violation of international law" to mean "'the nationalization or expropriation of property without payment of the prompt adequate and effective compensation required by international law,' including 'takings which are arbitrary or discriminatory in nature.'"  *Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 251 (2d Cir. 2000) (quoting H.R. Rep. No. 94–1487, at 19 (1976)). Tarala and Wu have not alleged sufficient facts to plausibly establish that the freezing of Wu's account constituted a taking, much less a taking "in

violation of international law." Rastra Bank and the Department froze Wu's financial assets in connection with an ongoing money laundering investigation. Unsurprisingly, Tarala and Wu offer no authority for the proposition that a routine law enforcement action such as this constitutes a taking within the meaning of § 1605(a)(3), and the complaint's conclusory criticisms of the manner in which Nepal has conducted its investigation are insufficient to prove a violation of international law.

Accordingly, the takings exception does not apply in this action.

**II.     Personal Jurisdiction and Service of Process**

Because we agree with the district court's determination that it lacked subject matter jurisdiction because Rastra Bank and the Department are immune from suit under the FSIA, we need not decide whether the district court correctly determined that it lacked personal jurisdiction due to defects in the service of process.

**CONCLUSION**

For the reasons stated above, we AFFIRM the district court's judgment vacating the default judgment and dismissing the complaint.