*MMA Consultants 1 v. Republic of Peru*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 19th day of December, two thousand seventeen.

Present:
> DEBRA ANN LIVINGSTON,
> DENNY CHIN,
> > *Circuit Judges*,
> JOHN G. KOELTL,
> > *District Judge*.*

---

MMA CONSULTANTS 1, INC.,
> *Plaintiff-Appellant*,

v.                                                                  17-1157

THE REPUBLIC OF PERU,
> *Defendant-Appellee*.

---

For Defendant-Appellant:          PATRICK AHERN, Ahern and Associates, P.C., Chicago, Ill.

For Plaintiff-Appellee:           OWEN C. PELL (Jonathan C. Hamilton, Francisco X. Jijón, and Evelyn A. Fanneron, *on the brief*), White & Case LLP, New York, NY.

---

* Judge John G. Koeltl, of the United States District Court for the Southern District of New York, sitting by designation.

Appeal from a March 27, 2017 judgment of the United States District Court for the Southern District of New York (Batts, *J*.).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

MMA Consultants 1, Inc. ("MMA") appeals from a judgment of the United States District Court for the Southern District of New York, dismissing MMA's suit against the Republic of Peru ("Peru") for lack of subject-matter jurisdiction under the Foreign Sovereign Immunities Act ("FSIA") and failure to state a claim. MMA holds fourteen bearer bonds that Peru signed and executed in 1875 ("the Bonds"). In 2015, MMA purportedly sent three demand letters to the Embassy of Peru in Washington, D.C. seeking payment on the Bonds, receiving no response. On July 16, 2015, MMA commenced the present lawsuit, alleging breach of contract based on Peru's failure to remit payment of principal and interest on the Bonds. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal. For the following reasons, we conclude that the district court did not err in considering an Arbitration Tribunal award from 1901 ("the Award"), the district court's factual findings regarding subject-matter jurisdiction were not clearly erroneous, and the district court properly dismissed MMA's case on the grounds of lack of subject-matter jurisdiction under the FSIA.[1]

### A. Standard of Review

We review *de novo* a district court's legal determination that it lacks subject-matter jurisdiction under the FSIA. *Rogers v. Petroleo Brasileiro, S.A.*, 673 F.3d 131, 136 (2d Cir. 2012). When, as here, a defendant makes a "fact-based Rule 12(b)(1) motion"—that is, the defendant puts

---

[1] As a result, we need not determine whether MMA's complaint also fails to state a claim upon which relief could be granted.

forward evidence to challenge the factual contentions underlying the plaintiff's assertion of subject-matter jurisdiction—the district court is entitled to make findings of fact to resolve the dispute. *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 57 (2d Cir. 2016); *see also Bolivarian Republic of Venez. v. Helmerich & Payne Int'l Drilling Co.*, 137 S. Ct. 1312, 1324 (2017). We will not disturb the district court's resolution of a disputed factual issue unless the resolution was "clearly erroneous." *Carter*, 822 F.3d at 57 (quoting *Rent Stabilization Ass'n of N.Y. v. Dinkins,* 5 F.3d 591, 594 (2d Cir. 1993)). Under this standard, we may reverse a district court's factual findings only if we have a "definite and firm conviction" that the court made a mistake. *Anderson v. Bessemer City*, 470 U.S. 564, 573 (1985) (quoting *United States v. U.S. Gypsum Co.,* 333 U.S. 364, 395 (1948)). "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, [we] may not reverse it even though convinced that had [we] been sitting as the trier of fact, [we] would have weighed the evidence differently." *Id.* at 573–74.

### B.  *The District Court's Consideration of the Award*

MMA first argues that the district court erred in considering the Award during its determination of whether it possessed subject-matter jurisdiction.[2]  MMA insists that the Award's sole aim was to divide up the proceeds in the Bank of England account, and that Peru itself acknowledged that the Tribunal's jurisdiction was limited to this purpose. Thus, MMA claims, the district court should not have considered the Award, and Peru is estopped from citing to it. We disagree. The district court did not use the Tribunal's legal conclusions as a means to absolve Peru from liability, or to collaterally estop MMA from suing Peru. Rather, the court merely used the

---

[2] MMA also argues that the district court erred in considering the documents attached to an expert's declaration purporting to show that the Bonds were never publicly issued (the "Lide Declaration"). Br. for Pl.-Appellant at 11. We deem this argument forfeited because MMA's brief merely "state[s] [the] issue without advancing an argument." *Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998).

3

information contained in the Award as a basis for determining if it possessed subject-matter jurisdiction under the FSIA. The factual findings in the Award could be considered for their truth because they were made in an ancient document whose authenticity was established and that was prepared before January 1, 1998. *See* Fed. R. Evid. 803(16). The district court was well within its rights to examine evidence "beyond the pleadings, to the evidence properly before it," to determine if a valid FSIA defense existed. *Mortimer Off Shore Servs., Ltd. v. Fed. Republic of Ger.*, 615 F.3d 97, 105 (2d Cir. 2010). The district court correctly concluded that the Award was relevant for this purpose, and thus properly considered the Award.

### C. The District Court's Factual Determinations Concerning Subject-Matter Jurisdiction

MMA also argues that the district court made multiple clearly erroneous factual findings during its determination of whether it possessed subject-matter jurisdiction. Specifically, MMA insists that the court erred in finding that: (1) Hobson Hurtado, the designated place of payment for the Bonds' principal and interest, ceased to exist over 130 years ago; (2) the Consignee Company for the Guano in the United States of America ("CCG") held the Bonds from 1875 until at least 1881, and CCG simply debited and credited the value of the Bonds to Peru's account rather than issuing the Bonds to the public; and (3) Peru's debt on the Bonds had disappeared by 1881.[3]

We conclude that none of the district court's three findings was clearly erroneous. First, the district court had ample evidence to conclude that Hobson Hurtado ceased to exist over 130 years ago. Peru put forward two documents to support this theory: a New York City directory from

---

[3] MMA also insists that the district court erred in concluding that: (1) MMA "likely" purchased the Bonds in a collectibles market; (2) "at least some of the 1875 bonds have been posted for sale on eBay"; and (3) the district court adopted a version of the facts inconsistent with MMA's complaint. Br. for Pl.-Appellant at 49–50. These claims have no relevance for the question of subject-matter jurisdiction, however, and we therefore need not address the merits of this argument.

4

1879, and an official record from an 1882 Congressional hearing. MMA argues that both of these documents are "hearsay," and the district court should not have considered them. *See Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986). But both of these documents were prepared before January 1, 1998 and there is no reason to doubt their authenticity; they therefore qualify as "ancient documents" and are excepted from the hearsay rule. *See* Fed. R. Evid. 803(16); *George v. Celotex Corp.*, 914 F.2d 26, 30 (2d Cir. 1990). Second, the Award plainly states that CCG debited and credited the Bonds to Peru's account and never issued the Bonds to the public. Finally, the district court did not commit "clear error" in finding that Peru's debt on the bonds had disappeared by 1881. To be sure, the Award did find that Peru's debt *to CCG* was not extinguished by 1881, because CCG simply debited the Bonds to Peru's account without receiving any actual money. But it is plausible to read the Award as suggesting that by debiting the Bonds' value each year, CCG effectively redeemed *the Bonds*—thereby retaining its creditor rights while nullifying Peru's debt *on the Bonds*. *See, e.g.*, A83 (analogizing CCG's situation to "that of a creditor to whom the debtor has delivered or endorsed installments *solvendi causa*, and carries them in new account, because payment cannot be obtained at maturity"). At the very least, the district court did not commit "clear error" in reading the Award to support this conclusion.

MMA also makes two procedural objections to the district court's factual determinations, neither of which we credit. The first objection is that the district court should have allowed discovery and an evidentiary hearing before making the above-mentioned factual findings. We review the district court's decision not to hold an evidentiary hearing for abuse of discretion. *Peterson v. Islamic Republic of Iran*, No. 15-690, 2017 WL 5580324, at *7 n.6 (2d Cir. Nov. 21, 2017). We find no abuse of discretion here, because "the court 'consider[ed] all the submissions of the parties,'" and MMA has not shown "that a hearing was necessary because the resolution of

5

factual issues was not readily ascertainable from the declarations of witnesses or turned on questions of credibility." *Id.* (quoting *Filetech S.A. v. Fr. Telecom S.A.*, 304 F.3d 180, 183 (2d Cir. 2002) (per curiam)) (alteration in original). Second, MMA argues that the district court erred in making factual findings that overlapped with the merits. This argument, however, is directly foreclosed by the Supreme Court's decision in *Helmerich & Payne*, in which the Court stated that a district court *must* resolve factual questions if necessary to determine jurisdiction. *See Helmerich & Payne*, 137 S. Ct. at 1319.

### D. The District Court's Determination That It Lacked Subject Matter Jurisdiction Under the FSIA

#### 1. Overview

The FSIA "provides the 'sole basis for obtaining jurisdiction over a foreign sovereign in the United States.'" *Atlantica Holdings v. Sovereign Wealth Fund Samruk-Kazyna JSC*, 813 F.3d 98, 106 (2d Cir. 2016) (quoting *Republic of Arg. v. Weltover*, 504 U.S. 607, 611 (1992)). The statute broadly immunizes "foreign state[s] . . . from the jurisdiction of the courts of the United States," subject to a number of specified exceptions. 28 U.S.C. § 1604. The parties do not dispute that Peru is a "foreign state." Thus, we possess subject-matter jurisdiction to hear MMA's suit only if one of the FSIA's specified exceptions applies. *See Atlantica Holdings*, 813 F.3d at 106.

Once a defendant establishes that it is, indeed, a "foreign state" under the FSIA, the defendant is presumptively immune from suit in federal court. *Swarna v. Al-Awadi*, 622 F.3d 123, 143 (2d Cir. 2010). The plaintiff must then "establish by a preponderance of the evidence that an exception under the FSIA permits jurisdiction over the foreign sovereign." *Id.* If the plaintiff does indeed establish by a preponderance of the evidence that an FSIA exception applies, "the foreign

sovereign then bears the ultimate burden of persuasion that the FSIA exception does not apply."

*Id.*

The only exception at issue in this case is the FSIA's commercial activity exception, 28 U.S.C. § 1605(a)(2). Under this exception, a "foreign state shall not be immune" from federal court jurisdiction "in any case" where:

> the action is [1] based upon a commercial activity carried on in the United States by the foreign state; or [2] [based] upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or [3] [based] upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

*Id*. MMA argues that Peru is not immune because the first and third clauses of the commercial activity exception apply to this case. We disagree.

### 2) The Elements of Clauses One and Three of the Commercial Activity Exception

#### a. "Based Upon"

"[W]ithin the meaning of § 1605(a)(2), an action is 'based upon' the particular conduct that constitutes the gravamen of the suit." *Atlantica Holdings*, 813 F.3d at 107 (quoting *OBB Personenverkehr AG v. Sachs,* 136 S. Ct. 390, 396 (2015)) (internal quotation marks omitted). "Gravamen" is defined as the "basis" or "foundation" of a claim, that is, "those elements . . . that, if proven, would entitle a plaintiff to relief." *Id.* (quoting *Sachs*, 136 S. Ct. at 395) (alteration in original). In other words, we must "zero[] in on the core of the[] suit," *id.* (quoting *Sachs*, 136 S. Ct. at 396), and determine "a lawsuit's *foundation*," *id*. at 108. This is the "threshold step" for determining whether § 1605(a)(2) applies. *Chettri v. Nepal Rastra Bank*, 834 F.3d 50, 56 (2d Cir. 2016) (quoting *Garb v. Republic of Pol.*, 440 F.3d 579, 586 (2d Cir. 2006)).

7

Here, the "gravamen" of MMA's suit seems clear. According to the first paragraph of MMA's complaint, "[t]his is a breach of contract action *arising out of Peru's failure to pay fourteen (14) bearer bonds in [MMA's] possession . . . .*" A7, ¶ 1 (emphasis added). The complaint goes on to emphasize that "[MMA] brings this lawsuit against Peru for breach of its contractual obligations," because "Peru's failure and refusal to pay the principal and interest due on the fourteen (14) Bonds in [MMA's] possession constitutes a breach of contract." A11, ¶¶ 16–17. Thus, the "gravamen" of MMA's suit is Peru's failure to pay MMA for the Bonds, and MMA's suit is "based upon" that act (or failure to act) for purposes of § 1605(a)(2). As a result, the first and third clauses of the commercial activities exception apply to this suit only if Peru's refusal to pay MMA for the Bonds is either "a commercial activity carried on in the United States by [Peru]" (clause one), or "an act outside the territory of the United States in connection with a commercial activity of [Peru] elsewhere" that "causes a direct effect in the United States" (clause three).

MMA argues that the "gravamen" of its suit is not Peru's failure to pay for the Bonds, but rather Peru's signing and executing the Bonds in 1875, as well as "Peru's rejection of a demand letter sent from the U.S., to the Peruvian Embassy in Washington, D.C." Br. for Pl.-Appellant at 36. But we do not conduct the gravamen test by engaging in an "exhaustive claim-by-claim, element-by-element analysis" of a plaintiff's suit. *Sachs*, 136 S. Ct. at 396. Instead, we ask one simple question: what action of the foreign state "*actually injured*" the plaintiff? *Id.* at 395 (emphasis added). Here, the answer is Peru's failure to redeem the Bonds. There was "nothing [inherently] wrongful" about Peru's initial issuance of the Bonds, *see id.* at 396, and Peru's alleged breach of contract is the "foundation" of MMA's suit, *see Atlantica Holdings*, 813 F.3d at 108 (emphasis removed). In sum, the gravamen of MMA's suit is Peru's failure to redeem the Bonds upon presentment.

### b. "Commercial Activity"

In *Weltover*, the Supreme Court clarified that a foreign sovereign's activity is "commercial" if the sovereign undertakes the act "not as regulator of a market, but in the manner of a private player within it." 504 U.S. at 614. Most relevant for our purposes, the Court also held that a foreign sovereign's actions related to "garden-variety debt instruments"—including issuing bonds, executing bonds, and refusing to pay a debt on a bond—all classify as "commercial activities" for the purposes of § 1605(a)(2). *See id.* at 615–16. Thus, virtually all of Peru's alleged actions in this case—such as providing the Bonds to CCG in 1875, and refusing to pay MMA for the Bonds in 2015—are "commercial activities." Neither party apparently disputes this point. *See* SPA-39, n. 20.

### c. The Two "Commercial Activities" Exceptions

### a) The First Exception: Local "Commercial Activity"

Under the first clause of the commercial activities exception, a foreign state is not immune from a suit that is "based upon a commercial activity carried on in the United States by the foreign state." § 1605(a)(2). As described above, MMA's suit is "based upon" Peru's failure to compensate MMA for the Bonds, and Peru's failure to compensate MMA qualifies as a "commercial activity." Thus, the first clause is applicable to MMA's suit only if Peru's failure to compensate MMA was "carried on in the United States." Our case law demonstrates that it was not. In *Rogers*, we explained that a foreign government's decision not to redeem a bond is an act that occurs in the foreign country, not in the United States. 673 F.3d at 137–38. As we explained in *Rogers*,

> [t]he decision by a foreign sovereign not to perform is itself an act, but it is not an act in the United States; it is an act in the foreign state. A decision not to act, standing by itself, does not have an effect until there has been an anticipatory repudiation or a failure to act at the time required. And although the failure to act may have a legally significant effect in the place where the

act was to have been performed, the failure to act is not itself an act [in the United States].

*Id.* at 138 (quoting *Guirlando v. T.C. Ziraat Bankasi A.S.*, 602 F.3d 69, 76 (2d Cir. 2010)). We therefore held in *Rogers* that the simple fact that the plaintiff learned about Brazil's decision from an agent in the United States was not enough to make Brazil's decision occur "in the United States." *Id.* Similarly, here, Peru's decision not to compensate MMA for the Bonds was a decision that occurred abroad. The mere fact that MMA purportedly communicated with Peru's Embassy in Washington, D.C. is not a sufficient domestic nexus for these purposes. In sum, Peru's failure to redeem the Bonds is not "a commercial activity carried on in the United States," and the first clause therefore does not strip Peru of immunity.[4]

### b) The Third "Commercial Activity" Exception: Foreign "Commercial Activity" That Causes a Local "Direct Effect"

Under the third clause of the FSIA's commercial activities exception, a foreign sovereign is not immune from a suit "based . . . upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States." § 1605(a)(2). As we explained in *Chettri*, this clause consists of three elements: (1) the operative act (*i.e.*, the gravamen of the complaint) must have occurred outside the United States, (2) the act must have occurred "in connection with a commercial activity of the foreign state elsewhere," and (3) "the act [must have] cause[d] a direct effect in the United States." *Chettri*, 834 F.3d at 57 (quoting § 1605(a)(2)). The first element is satisfied here because, as

---

[4] In response to this analysis, MMA cites our decision in *Shapiro v. Republic of Bolivia*, 930 F.2d 101 (2d Cir. 1991). But *Shapiro* is distinguishable from MMA's case. The foreign state in *Shapiro* issued bearer bonds directly to an intermediary in the United States, and thus "introduced negotiable promissory notes into the United States for the purpose of raising capital." *Id.* at 1019. Here, however, the district court made a factual determination that although Peru executed the Bonds in the United States, the Bonds were neither "circulated nor held in the United States." SPA-43 n. 23. We do not find this factual conclusion to be "clearly erroneous," *Carter*, 822 F.3d at 57 (quoting *Rent Stabilization Ass'n of N.Y.,* 5 F.3d at 594), and we therefore conclude that *Shapiro* does not control here.

10

described above, the gravamen of MMA's complaint is Peru's decision not to redeem the Bonds, which is an act that occurred abroad. *See Rogers*, 673 F.3d at 138. The second element is also satisfied here because neither party disputes that Peru's decision occurred "in connection with" Peru's commercial activity outside the United States. SPA-46 n. 25. The sole question, then, is if Peru's failure to compensate MMA caused a "direct effect" in the United States.

As the Supreme Court explained in *Weltover,* for purposes of the third clause of § 1605(a)(2), "an effect is direct if it follows as an immediate consequence of the defendant's . . . activity." 504 U.S. at 618 (internal quotation marks omitted). We have "consistently" read this statement to mean that a breach of contract "causes a direct effect in the United States" when "the United States is the place of performance for the breached duty." *Atlantica Holdings*, 813 F.3d at 108–09. Specifically, when a foreign sovereign defaults on its commercial obligations, that default "has a direct effect in the United States if the defaulting party is contractually obligated to pay in this country." *Rogers*, 673 F.3d at 139. Thus, the simple fact that the plaintiff is an American corporation—and, therefore, suffered harm from the breach in the United States—is not a "direct" enough effect in the United States. *See id.* at 140; *Guirlando*, 602 F.3d at 78; *Virtual Countries, Inc. v. Republic of S. Afr.*, 300 F.3d 230, 240 (2d Cir. 2002). The key question is the location of the contract's "place of performance," *Atlantica Holdings*, 813 F.3d at 109—that is, the location where "performance" was "required," *Kensington Int'l Ltd. v. Itoua*, 505 F.3d 147, 158 (2d Cir. 2007). As a result, when a foreign sovereign could fulfill its obligation under a contract by tendering performance anywhere, then a contract does not have a "place of performance," and the sovereign's breach of that contract does not cause a "direct effect" in the United States. *Id.* at 159.

Here, the Bonds clearly indicate that the intended "place of performance" is the United States, because "both principal and interest [are] to be paid in United Sates Gold Coin at the Office

11

of [Hobson Hurtado], Financial Agents of Peru in New York." A181. However, as noted above, the district court concluded that Hobson Hurtado ceased to exist over 130 years ago. As a result, it is literally impossible for the contract to be performed at its original intended location. Thus, MMA bears the burden of establishing, "by a preponderance of the evidence," *see Swarna*, 622 F.3d at 143, that the "place of performance" of the Bonds remains the United States nonetheless. We conclude that MMA has not done so.

MMA argues that because Peru and CCG failed to hold the relevant lotteries between 1875 and 1880, the requirement to present the Bonds to Hobson Hurtado to obtain payment never accrued. As a result, MMA contends, the only method for a bondholder to obtain payment today would be to present the Bonds directly to Peru. But according to this logic, Peru could fulfill its contractual requirements by compensating MMA *anywhere*, not just in the United States. In other words, "[t]here is no requirement that repayment of this debt be made in New York. Payment could come from anywhere and take any form." *Kensington*, 505 F.3d at 159. A contract featuring such terms does not have its "place of performance" in the United States. *See id.*; *see also Virtual Countries*, 300 F.3d at 240. MMA thus cites no relevant domestic "direct effect" that occurred from Peru's non-payment other than the fact that MMA failed to receive compensation for the Bonds. And our case law makes clear that an act does not cause a "direct effect" in the United States under § 1605(a)(2) simply because the act caused financial loss to an American corporation. *See Virtual Countries*, 300 F.3d at 240.

In short, MMA has not established by a preponderance of the evidence that an FSIA exception applies in this case. Accordingly, the district court correctly dismissed this suit for lack of subject-matter jurisdiction. *See Atlantica Holdings*, 813 F.3d at 106; *Swarna*, 622 F.3d at 143.

* * *

12

We have considered MMA's remaining arguments and find them to be without merit.

Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk